IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. _____

Jennifer Horton and
Living Waters, LLC,

Plaintiffs,

v.

Buncombe County,

Defendant.

SUMMONS IN A CIVIL ACTION

**To the above named Defendants:**

**A LAWSUIT HAS BEEN FILED AGAINST YOU.**

**You are hereby summoned** to answer the Complaint in the action, and to serve a copy of your Verified Answer to the Complaint **within 21 days after service of this summons,** exclusive of the day of service.

**The answer or motion must be served on the plaintiff's attorney, whose name and address are:**

Alex Jordan
KING LAW OFFICES PC
22 S. Pack Square, Ste 700
Asheville, NC 28801
E: ajordan@kinglawoffices.com

**If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. _____

Jennifer Horton and
Living Waters, LLC,

Plaintiffs,

v.                                                      COMPLAINT

Buncombe County,

Defendant.

NOW COME the Plaintiffs, Jennifer Horton and Living Waters, LLC, by and through undersigned counsel, hereby complaining of the Defendant as follows:

## INTRODUCTION

1. This civil action arises from the unconstitutional termination, suspension, discouragement, and obstruction of State–County Special Assistance ("SA") benefits for disabled and elderly residents of licensed adult care homes, as well as the resulting financial harm to the operator. Plaintiffs seek compensatory, nominal, and punitive damages, together with declaratory and ancillary equitable relief as necessary to restore their rights and fully effectuate monetary recovery.

2. Defendant unlawfully implemented and enforced policies and actions that:

(a) terminated or suspended SA benefit payments and sought recoupment without timely or adequate notice, hearing, or continuation of benefits required under federal and state due-process law;

(b) misapplied N.C. Gen. Stat. § 108A-47 and used an overbroad, unprecedented conflict-of-interest interpretation to categorically and retroactively deem residents ineligible based solely on the elected office of the owner and without individualized assessment or lawful authority;

(c) defied State directives ordering reinstatement of SA benefits "effective 1/1/2025" with "no break in coverage," demonstrating that the deprivation of benefits lacked any legal foundation; and

(d) discouraged, obstructed, or refused to process applications and reapplications for SA benefits thereby depriving vulnerable residents of subsistence-level assistance and causing economic, operational, and reputational harm to the operator.

PARTIES

3. Plaintiff, Jennifer Horton ("Ms. Horton"), is a resident of the State of North Carolina and was, at all relevant times, the owner/operator and/or administrator of licensed adult care homes operated through Plaintiff, Living Waters Enterprises, LLC, in Buncombe, North Carolina. Plaintiffs suffered harms including loss of payments, business injury, reputational harm, and related damages.

4. Plaintiff Living Waters Enterprises, LLC ("Living Waters") is a North Carolina limited liability company that owned and/or operated licensed adult care homes,

including Mount Moriah Assisted Living #1, license number: FCL-011-405; Mount Moriah Assisted Living #2, license number: FCL-011-402; Mount Moriah Assisted Living #3, license number: FCL-011-398; Mount Moriah Assisted Living #4, license number: FCL-011-401; and Mount Moriah Assisted Living #5, license number: FCL-011-400, housing low-income residents eligible for SA benefits.

5. Defendant Buncombe County is responsible for SA eligibility determinations, notices, recoupments, and case management.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 because Plaintiffs assert claims under 42 U.S.C. § 1983, the Fourteenth Amendment, and federal statutes. The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

7. Upon information and belief, Buncombe County has waived the defense of sovereign immunity through the purchase of liability insurance or participation in a qualifying risk pool.

## FACTUAL ALLEGATIONS

8. North Carolina's Special Assistance ("SA") program is a joint State–County program administered by the North Carolina Department of Health and Human Services ("NCDHHS") and implemented through county departments of social services. The program provides a critical cash supplement enabling low-income older adults and individuals with disabilities to reside safely in licensed adult care homes rather than in

institutional settings. SA benefits are conferred based on resident eligibility—not on the identity, employment, or elected status of the facility owner.

9. N.C. Gen. Stat. § 108A-47 restricts the use of SA payments in facilities "owned or operated, in whole or in part," by certain public officials. Legislative history indicates that G.S. 108A-47 was enacted decades ago, long before the creation and widespread use of limited liability companies in North Carolina, which were first authorized by statute in 1993. At the time of enactment, adult care homes were typically small, individually owned operations, and the statute was intended to prevent direct personal enrichment of a public official through state-funded payments—not to penalize residents or terminate the benefits of disabled individuals receiving care. The statute contains no language authorizing the deprivation of resident benefits without due process; no language mandating termination when an indirect or non-operational ownership interest exists; and no language addressing situations where the official takes corrective action, divests ownership, or appoints neutral administrators.

10. The legislative purpose of N.C. Gen. Stat. § 108A-47 was to avoid conflicts of interest involving direct financial benefit to public officials. The statute was never intended to function as a punitive measure against residents or as a basis for categorical denial of SA.

11. Nothing in N.C. Gen. Stat. § 108A-47 authorizes counties to terminate benefits retroactively, refuse applications, delay reinstatement, discourage eligibility determinations, or ignore State directives, nor does the statute override federal or state constitutional guarantees. As State officials later confirmed, this situation "did not

involve a criminal self-dealing statute," underscoring that Defendant's interpretation was legally incorrect and excessively broad.

12. Public officials in North Carolina are subject to general conflict-of-interest laws, including N.C. Gen. Stat. § 14-234. G.S. 14-234 which contains an express safe-harbor provision for programs of direct public assistance offered on a nondiscriminatory basis to the general public. SA is such a program, and these provisions do not permit the deprivation of residents' rights, the termination of benefits without due process, or the punitive treatment of facilities associated with an elected official. Even assuming a perceived conflict existed, neither N.C. Gen. Stat. § 108A-47 nor N.C. Gen. Stat. § 14-234 authorizes Defendant to deny residents their statutory and constitutional protections.

13. State SA staff instructed counties to treat residents of Plaintiffs' licensed homes as if they were in an unlicensed facility, and several County employees informed guardians that SA applications could not be submitted or reconsidered for any resident in Plaintiffs' homes. These statements were incorrect and resulted in materially incomplete information being provided to residents and their representatives.

14. North Carolina law provides parallel protections. Article I, Section 19 of the North Carolina Constitution prohibits deprivation of property without due process ("Law of the Land") and prohibits arbitrary and unequal treatment. SA benefits are a protected property interest under North Carolina law once conferred based on eligibility. Terminating or suspending SA—particularly categorically—requires strict adherence to procedural safeguards, none of which were followed here.

15. The State's reinstatement directive further confirms that the County's actions were inconsistent with law. After Ms. Horton divested ownership, NCDHHS instructed that SA cases must be reopened "effective 1/1/2025" and that there was "no break in coverage." This directive establishes that: (a) SA payments were legally permissible during the period in which Ms. Horton still owned and administered the facilities; (b) residents remained eligible during that period; (c) the County's interpretation of N.C. Gen. Stat. § 108A-47 was legally incorrect; (d) divestiture was not required for residents to remain eligible; (e) termination and recoupment lacked legal foundation; and (f) the County acted unlawfully in refusing to follow State instructions. County Director, Phillip Hardin's ("Mr. Hardin") response—calling reinstatement "blatantly wrong"— demonstrates willful defiance of State authority and deliberate disregard of residents' rights.

16. Under federal due-process requirements, state constitutional protections, and the plain meaning and legislative intent of applicable statutes, Defendant were obligated to ensure continuity of benefits unless and until lawful procedures were followed. Rather than complying, Defendant misinterpreted statutes, ignored State corrections, withheld notices, discouraged applications, refused reinstatement, issued improper recoupments, and concealed critical records—actions that violated long-standing principles of administrative law, constitutional law, and North Carolina's public-assistance framework.

17. County staff advised Ms. Horton that discouragement "had not been proven" only because the internal system showed no application attempt. The system contained

no such documentation because Ms. Horton had been told she was not permitted to apply under the County's conflict interpretation.

18. During this period, County employee Tiffany Gillis ("Ms. Gillis") sent inappropriate and unprofessional messages directly referencing Ms. Horton's elected office and mocking her involvement with SA cases. This included statements that staff had "had a time with her since she is county commissioner now" and sarcastic remarks regarding SA case handling. These comments occurred while Ms. Gillis was actively involved in SA processing for Plaintiffs' residents.

19. On May 13, 2025, Ms. Horton filed a formal personnel complaint with the County Manager regarding Ms. Gillis's conduct and broader workplace concerns, including fears of retaliation expressed by other administrators. The County Manager acknowledged receipt but did not provide clear guidance or address the underlying issues raised.

20. After Ms. Horton filed her complaint, Buncombe County staff began characterizing her lawful inquiries—including attempts to correct misdirected SA payments and obtain clarity on resident eligibility—as attempts to break laws or misuse her office. These accusations were false and inconsistent with the written record.

21. Buncombe County staff later admitted that SA case assignment, reopening, and transfers remained unresolved and that the County was determining jurisdiction with other counties. Even after Ms. Horton's divestiture, Defendant issued inconsistent and contradictory guidance, leaving residents in ongoing uncertainty.

22. As a result of Defendant's actions and omissions—including wrongful terminations, delayed reinstatements, recoupment demands, discouragement, and retaliatory conduct—Plaintiffs experienced significant operational harm. At least one licensed home stopped operating and another began phasing out due to instability in SA processing, unpredictable funding, and lack of regulatory guidance.

23. Defendant's misapplication of N.C. Gen. Stat. § 108A-47, categorical denial of SA applications, unprofessional conduct, shifting requirements, and false accusations were motivated substantially by hostility toward Ms. Horton in her capacity as a County Commissioner and by retaliation for reporting staff misconduct.

24. The pattern of disparate treatment and obstructive conduct continued into mid-2025. On August 25 and 27, 2025, Adult Home Specialist, Allison Garrett ("Ms. Garrett"), engaged in conduct inconsistent with applicable rules, including taking unauthorized photographs, and issuing an unsupported citation. Ms. Horton filed a formal complaint with DHSR stating the conduct appeared retaliatory and politically motivated.

25. Ms. Horton submitted her complaint to multiple required DHHS addresses, yet emails were returned or rejected. Ms. Horton was later informed the complaint was "not in the system" despite her supplying documentation showing timely submissions.

26. During this period, Ms. Horton submitted an Informal Dispute Resolution (IDR), which DHSR later confirmed met established criteria.

27. Despite these steps, significant communication gaps persisted. After Ms. Horton's complaint was transferred out of Buncombe County's jurisdiction, oversight

was reassigned to other counties with vague information. Ms. Horton was not informed for nearly a month which county or specialist had oversight.

28. Even after DHHS confirmed Plaintiff was no longer the owner, Mr. Hardin continued to refer to Plaintiff as "the owner" in communications, using this incorrect assertion to justify refusing reinstatement.

29. Henderson County performed one monitoring visit and then ceased communication despite multiple outreach attempts by Ms. Horton seeking regulatory guidance.

30. The lost complaints, delayed communication, refusal to receive filings, non-responsive oversight, and inconsistent application of licensure rules are part of a continuing pattern of disparate treatment toward Plaintiffs following Ms. Horton's election.

31. These ongoing issues—including denial of regulatory guidance, mishandled complaint submissions, and inconsistent survey practices—continue to place Plaintiffs' facilities and residents at operational and compliance risk.

32. Before December 2024, similarly situated SA recipients in other licensed homes received uninterrupted SA without categorical exclusion based solely on an owner or administrator's elected status. No other provider was labeled "no longer SA approved" solely due to elected office.

33. Residents of Plaintiff's adult care homes are older adults and adults with disabilities requiring supervision, assistance with activities of daily living, and structured residential care.

34. SA benefits are essential income that allow disabled residents to remain in community-based care. Defendant was aware that terminating or discouraging SA would jeopardize residents' ability to remain safely housed.

35. Plaintiffs maintained ongoing business relationships and referral sources. Defendant's actions—including labeling the homes conflicted or ineligible—foreseeably interfered with those relationships.

36. Buncombe County presented a selectively incomplete subset of emails to the Board of Commissioners in connection with the journalist's request, omitting exculpatory and incriminating communications.

37. Plaintiffs engaged in protected speech and petitioning by filing complaints, requesting records, and cooperating with a journalist, including but not limited to informing that Defendant referenced Ms. Horton's elected office and public criticism in internal emails.

38. Defendant acted pursuant to its established pattern, practice, usage, and/or custom including: (a) treating Plaintiffs differently from similarly situated providers; (b) discouraging SA applications; (c) failing to provide required due-process notices; (d) defying State directives; and (e) concealing public records.

39. Plaintiffs repeatedly requested legal authority supporting Defendant's interpretation of N.C. Gen. Stat. § 108A-47 and N.C. Gen. Stat. § 14-234, but Defendant produced no such authority.

40. Defendant was repeatedly informed that their actions were causing imminent harm, including risk of homelessness to disabled persons, yet Defendant willfully refused to correct errors or follow State directives.

41. As of filing, Plaintiffs continue to experience operational harm due to unresolved SA processing failures.

42. Defendant applied an overly broad interpretation of N.C. Gen. Stat. § 108A-47 that was never intended by the General Assembly.

43. On December 3, 2024, Mr. Hardin emailed Buncombe County Health and Human Services Director, David Sweat ("Mr. Sweat"), claiming the State told the County to "terminate these cases and recoup funds," but no such State directive existed.

44. Buncombe County Commissioner, Amanda Edwards ("Ms. Edwards"), participated in communications with State officials and forwarded internal correspondence—including Ms. Horton's request for assistance—to her personal email. Her involvement constitutes policymaker participation.

45. On or around December 2024, Ms. Edwards suggested to Ms. Horton that if Ms. Horton would resign, this would "all go away."

46. Emails produced by the State reveal that Mr. Hardin described Plaintiffs' facilities and Ms. Horton as a "no win situation," asserting that Ms. Horton had "been able to shepherd through eligibility through the State for things that are not normal" and claiming that she "believes we should not be asking for any information, just approve everything she brings forward." Mr. Hardin further wrote that "this has become a major obstacle as we move forward with trying to protect the integrity of the

program," and that County administration had asked whether the County could "conflict out all SA applications dealing with Mount Moriah Assisted Living, Living Waters, whose administrator is Jennifer Horton." These statements were contained in internal communications and were never shared with Ms. Horton at the time, but reflect animus, hostility, and a predetermined stance against Plaintiffs.

47. Emails produced by NCDHHS show that a member of the Board of County Commissioners forwarded Plaintiff Jennifer Horton's email regarding unlawful SA terminations, missing notices, and resident harm to State officials. This forwarding demonstrates that at least one policymaker on the Board was aware of the SA issues affecting Plaintiffs during the relevant period. These communications are inconsistent with later County representations that SA decisions were handled exclusively by staff without Board awareness and support a finding of policymaker-level knowledge and ratification.

48. When Ms. Horton requested information about complaints regarding the facilities, Defendant required her to submit a public-records request, unlike other Commissioners.

49. Beginning in 2025, Plaintiffs and a journalist submitted public-records requests. State responses contained emails referencing communications with County officials that were not included in County productions.

50. On June 18, 2025, Ms. Horton requested AHS Facility Reports. The County Manager directed her to the public-records portal instead of providing the information.

51. Defendant initiated SA recoupments without issuing required notices to residents or guardians.

52. Defendant never issued corrected or rescission notices even after the State clarified that terminations and recoupments were improper, as no lawful basis for the recoupments existed.

53. After divestiture, the State directed that cases be reopened "effective 1/1/2025" with "no break in coverage." Mr. Hardin refused to comply, calling reinstatement "blatantly wrong" and asserting responsibility would fall on the State.

54. Despite reinstatement directives, Defendant failed to reopen cases promptly or notify residents.

55. State officials clarified in internal communications that the situation did "not involve a criminal self-dealing statute," expressly distinguishing the matter from N.C. Gen. Stat. § 14-234 and contradicting the County's position that the circumstances required mandatory, immediate, and punitive termination of SA for all residents. The State's clarification demonstrates that the County applied an overly rigid and legally incorrect interpretation and imposed consequences far beyond what the law required.

56. State-produced emails—including Mr. Hardin's "no win situation," "conflict out all SA applications," and "blatantly wrong" emails—were not included in the County's FOIA production to the journalist or the Board.

57. On August 18, 2025, counsel for Plaintiffs submitted a formal written public-records request to Buncombe County and NCDHHS seeking all records, communications, emails, and directives concerning the handling of SA cases for

residents of Plaintiffs' facilities, including all correspondence with State officials. Despite statutory obligations requiring prompt production of non-exempt public records, as of the date of filing, neither Buncombe County nor NCDHHS has provided a full or substantive response, nor any explanation for the continued delay.

58. The failure to respond to the August 18, 2025, attorney-submitted request—combined with the previously documented withholding and selective disclosure of emails—demonstrates a persistent pattern of obstruction, concealment, and noncompliance with the North Carolina Public Records Act. Plaintiffs are informed and believe, and allege, that records responsive to the August 18 request include additional communications concerning the conflict-of-interest determination, SA terminations, recoupments, and internal County decision-making, which Defendant have failed or refused to disclose.

59. On December 16, 2025, the Defendant provided documents requested by Plaintiffs but the document production was incomplete and did not provide all the documents requested by the Plaintiffs.

60. The documents that are missing demonstrate that County and State officials Defendant were not lawfully carrying out their duties.

61. On December 16, 2025, Plaintiffs were informed via email that due to conflicts of interest issues arising from this matter, Buncombe County staff could not meet with Plaintiffs or answer their questions related to pending matters with the North Carolina Department of Health and Human Services; all questions regarding adult care home routine monitoring, complaint investigation, and technical assistance should be directed

to Transylvania County; and all questions related to Special Assistance for Adult Care Home Residents and foster care should be directed to Henderson County.

LEGAL BACKGROUND

62. The State-County SA program is administered by NCDHHS through county departments. While N.C. Gen. Stat. § 108A-47 restricts SA payments for persons residing in facilities "owned or operated, in whole or in part," by certain public officials, the statute does not abrogate residents' procedural due process rights or permit retroactive deprivation without notice and hearing. In fact, the Plaintiff Jennifer Horton moved immediately to divest ownership to allow residents to continue in the homes. Despite this, state officials would not acknowledge these efforts and still pushed the residents away.

63. North Carolina public officials are independently subject to conflicts of interest statutes, including N.C. Gen. Stat. § 14-234 and related provisions, but those statutes likewise do not authorize agencies to disregard constitutional procedural protections owed to benefit recipients.

64. Federal and state law require due process before termination or reduction of public assistance benefits. The Fourteenth Amendment protects against deprivation of property without due process of law, and SA benefits are a protected interest once conferred based on eligibility. State law provides parallel protections under Article I, Section 19 ("Law of the Land" clause).

65. The foregoing was caused by maintained policy, custom, or pattern of violating or condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations.

<u>FIRST CLAIM FOR RELIEF</u>
Violation of the Fourteenth Amendment to the U.S. Constitution
42 U.S.C. § 1983

66. Plaintiffs hereby incorporate above paragraphs 1 – 66 by reference as if fully set forth herein.

67. Section One of the Fourteenth Amendment to the United States Constitution states, in pertinent part, "[n]o state…shall…deprive any person of life, liberty, or property, without due process of law…"

68. Plaintiffs possessed a legitimate claim of entitlement to SA benefits and payment continuity, and Defendant deprived them of that property without adequate due process. Defendant's due process failures include, without limitation: (a) inadequate, late, or no written notice; (b) lack of statement of reasons and citations; (c) failure to advise of appeal rights and continuation of benefits; (d) categorical terminations and denials; and (e) retroactive recoupments without hearing.

69. The Defendant's due process failures were caused by maintained policies, customs, or patterns of violating or condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations in such a manner.

70. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

## SECOND CLAIM FOR RELIEF
### Equal Protection (Class-of-One/Arbitrary Treatment)
### 42 U.S.C. § 1983

71. Plaintiffs hereby incorporate above paragraphs 1 – 70 by reference as if fully set forth herein.

72. Section One of the Fourteenth Amendment to the United States Constitution states, in pertinent part, "[n]o state…shall…deny to any person within its jurisdiction the equal protection of the laws…"

73. Defendant intentionally treated Plaintiffs' facilities differently from similarly situated SA recipients and facilities, without a rational basis, including categorical discouragement of applications and summary terminations, motivated by arbitrary or acrimonious reasons, specifically toward Plaintiff Jennifer Horton.

74. The Defendant's selective treatment lacked any legitimate governmental purpose as applied and was implemented through policy or custom.

75. Defendant's unlawful, arbitrary, selective treatment was caused by maintained policies, customs, or patterns of violating or condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations in such a manner.

76. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

## THIRD CLAIM FOR RELIEF
### Substantive Due Process (Class-of-One/Arbitrary Executive Action)
### 42 U.S.C. § 1983:

77. Plaintiffs hereby incorporate above paragraphs 1 – 76 by reference as if fully set forth herein.

78. Defendant's conduct shocks the conscience and cannot be justified by any legitimate government interest.

79. Defendant's arbitrary refusal to process or reinstate SA promptly and decision to impose contradictory and shifting requirements foreseeably caused Residents of Plaintiff's adult care homes to suffer deprivations of subsistence benefits, risk of displacement, anxiety, and out-of-pocket financial losses.

80. The arbitrary refusal to process or reinstate SA and decision to impose contradictory and shifting requirements, despite Plaintiffs' efforts to mitigate damages, lacked any legitimate governmental purpose as applied and was implemented through policy or custom.

81. Defendant's unlawful arbitrary refusal to process or reinstate SA promptly and decision to impose contradictory and shifting requirements was caused by maintained policies, customs, or patterns of violating or condoning the violation of state or federal laws, rules, ordinances, codes, and/or regulations in such a manner.

82. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

FOURTH CLAIM FOR RELIEF
Violation of the Americans with Disability Act, Title II, 42 U.S.C. § 12132, and
Rehabilitation Act § 504, 29 U.S.C. §794

83. Plaintiffs hereby incorporate above paragraphs 1 – 82 by reference as if fully set forth herein.

84. Defendant is a public entity and recipient of federal financial assistance.

85. Defendant denied Plaintiffs the benefits of SA or subjected them to discrimination by reason of disability through policies and practices that foreseeably and disproportionately harmed disabled residents in adult care homes by terminating or discouraging benefits without lawful process.

86. Defendant failed to reasonably modify policies to avoid discrimination and to ensure program access.

87. Defendant's acts constitute a violation of the Americans with Disability Act, Title II, 42 U.S.C. § 12132, and Rehabilitation Act § 504, 29 U.S.C. §794.

88. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

FIFTH CLAIM FOR RELIEF
Violation of North Carolina Constitution, Article 1, Section 19 (Law of Land/ Equal Protection)

89. Plaintiffs hereby incorporate above paragraphs 1 – 88 by reference as if fully set forth herein.

90. Defendant deprived Residents of Plaintiff's adult care homes of property (SA benefits) without due process of law and treated Plaintiffs arbitrarily and unequally. No adequate state remedy exists that fully compensates Plaintiffs for these constitutional violations. Plaintiffs therefore assert a direct claim under the North Carolina

Constitution for damages against Buncombe County consistent with North Carolina law.

91. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

SIXTH CLAIM FOR RELIEF

Violation of Article 2, Part 3, of Chapter 108A of the North Carolina General Statutes
Wrongful Termination/Suspension of SA Benefits

92. Plaintiffs hereby incorporate above paragraphs 1 – 91 by reference as if fully set forth herein.

93. Defendant's actions contravened North Carolina statutes, regulations, and policies governing SA eligibility, notice, hearing rights, continuation of benefits pending appeal, and limitations on recoupment.

94. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

SEVENTH CLAIM FOR RELIEF

Declaratory Judgment
N.C. Gen. Stat. § 108A-47 and N.C. Gen. Stat. § 14-234

95. Plaintiffs hereby incorporate above paragraphs 1 – 94 by reference as if fully set forth herein.

96. Plaintiffs seek construction of N.C.G.S. § 108A-47 and confirmation that conflicts-of-interest statutes like N.C. Gen. Stat. § 14-234 do not permit retroactive or categorical deprivation without due process.

## EIGHTH CLAIM FOR RELIEF
### Negligence

97. Plaintiffs hereby incorporate above paragraphs 1 – 92 by reference as if fully set forth herein.

98. Defendant owed statutory and common-law duties to administer SA lawfully, to provide adequate notice and hearings, and to avoid foreseeable harm.

99. Defendant breached its duties through acts and omissions alleged herein, proximately causing Plaintiffs' damages.

100. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered damages in an amount to be proven at trial for which the Defendant is liable and the Plaintiffs can recover.

101. Upon information and belief, Buncombe County has waived the defense of sovereign immunity through the purchase of liability insurance or participation in a qualifying risk pool.

### JURY DEMAND

102. Plaintiffs hereby demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant, awarding:

1. Damages as permitted by law, including but not limited to compensatory and punitive, to proven at trial;

2. A declaration that Defendant's termination, suspension, discouragement, and recoupment practices, as applied to Plaintiffs, violated the Fourteenth Amendment and

Article I, Section 19 of the North Carolina Constitution, and applicable federal and state

statutes;

3. Attorneys' fees and costs, including under 42 U.S.C. § 1988;

4. Pre- and post-judgment interest; and

5. Such other and further relief as the Court deems just and proper to make

Plaintiffs whole.

This 2nd day of February 2026.

**KING LAW OFFICES, PC**
/s/Brian King
Brian W. King
NC Bar: 25623
Nicholas A. White
NC Bar: 53661
Alex T. Jordan
NC Bar: 64004
22 S. Pack Square, Ste 700
Asheville, NC 28801
(828) 288-3085
bking@kinglawoffices.com
nwhite@kinglawoffices.com
ajordan@kinglawoffices.com
*Attorneys for the Plaintiffs*